IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-01081-RPM

RONALD R. PACE,

    Plaintiff,

v.

WOODMEN HILLS METROPOLITAN DISTRICT,
LARRY R. BISHOP, and
JANICE L. PIZZI,

    Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

    Woodmen Hills Metropolitan District ("District") formed under a Colorado statute, Title 32, C.R.S., provides park and recreation services as well as local water and wastewater utilities to a residential development in unincorporated El Paso County, Colorado. It is governed by a five member board of directors elected by property owners in the District who are eligible electors. Ronald Pace is a disabled veteran with 100% disability diagnosed as post-traumatic stress syndrome. He moved into the District in 2006 and became interested in its management. During the time relevant to this action, Larry Bishop was employed as the District Manager and Janice Pizzi was on the Board of Directors.

    The District issued bonds to finance the construction of its facilities and with the adverse economic developments in 2008, the financial condition of the District became a matter of concern to its residents and management.

Pace began attending the regular public meetings of the Board in 2008 and voiced his criticisms of its financial management, including the salaries and benefits being paid to employees, including Bishop. Pace obtained information from open records requests and published it on a website www.savewoodmenthills.com.

On November 20, 2008, the public discussion at a Board meeting became heated. Pace was a participant.

On January 5, 2009, Bishop observed that Pace's check in payment of District services bore the notation "Your next."

During a meting in Bishop's office on January 8, 2009, Pace had a verbal altercation with Gene Cozzolino, a District employee. Bishop's reaction was to ban Pace from entering the District headquarters building in Falcon, Colorado.

On January 28, 2009, a District resident, Anthony DiCenso, told Bishop of overhearing a conversation in which Pace said that he felt threatened by Bishop and would not hesitate to get a gun and defend himself. Bishop reported that information to the El Paso County Sheriff's office.

On January 30, 2009, Bishop received an e-mail from Mike Pizzi, husband of Janice Pizzi, saying that during the Board meeting on November 20, 2008, he overhead Pace say, "I ought to get an AK 47 and blow these assholes away."

At that time, Bishop was aware that Pace was active in organizing an effort to recall Janice Pizzi, who had been elected President of the Board in December, 2008. Pace made that clear at the Board meeting on February 26, 2009, speaking during the open comment period. He said that the recall movement was underway due to the Board's failure to address citizen

complaints regarding enforcement of covenants and the excessive salaries being paid to employees.

On March 9, 2009, the Citizens Action Recall Committee, comprised of five members, Ronald Pace, Martha Wallner, Joanne Seeker, Stanley Burgess and William Chin, was registered with the Colorado Secretary of State as required by Colorado's election law.

Bishop sent a notice to Pace on March 11, 2009, barring him from communicating with District employees other than in writing.

In April, 2009, the District hired Vladimir Jones, a public relations firm, to assist in a media campaign to improve its public image. At that time the District was negotiating with Bathgate Capital, the representative of the bondholders, to attempt to restructure its debt by lowering the interest rate or deferring interest payments.

On May 6, 2009, Bishop received an email from Pace, saying that he wanted to come view a map hanging on the wall of the District office to assist in coordinating the recall effort. Acknowledging Bishop's ban, Pace wrote, "Guess im [sic] going to jail tomorrow so you try to personally stop me ok." Bishop called 911 but Pace did not come in that day.

On May 7, 2009, an exchange of words occurred between Pace and District employee Eddie Avedikian in a church parking lot. Pace approached Avedikian and asked him what he was doing. When Avedikian responded that it was none of Pace's business, Pace opened the door of his vehicle and asked Avedikian if he wanted to back that up. Avedikian walked into the church without further incident.

On May 8, 2009, Bishop, with the assistance of counsel, filed a Verified Complaint for Civil Protection Order, pursuant to C.R.S. § 13-14-102, on behalf of himself and 16 other

District employees against Pace in El Paso County Court. (Def.'s Ex. A). The Verified Complaint alleged the following incidents as evidence of threats and possible acts of violence:

> Physically threatens Larry D. Bishop, manager of Woodmen Hills Metropolitan District via email and telephone stating Larry could call the cops whether anyone liked it or not and that Mr. Pace was coming to the District office even though he has been banned from entering the District office. Larry Bishop fears for his health and physical well being when encountered by Mr. Pace.
>
> At 12:08, May 7, 2009, Eddie Avedikian, a Protected Person and employee of Woodmen Hills Metropolitan District, was approached by Ron Pace outside Grace Community Church. Mr. Pace asked Eddie what he was doing and Eddie replied it was none of his business and Mr. Pace proceeded to open the door of his truck and asked if Eddie wanted to back that up. Eddie proceeded into the Church and Mr. Pace drove off.
>
> Attended Woodmen Hills District Board meeting. Mr. Pace was visibly upset and left the meeting while stating that he would get his AK-47 and blow these people away.
>
> Mr. Pace has a history of harassing and threatening District employees, disrupting and threatening during District public meetings, threats of violence toward Larry D. Bishop and other District employees, disrupting the District Office and its staff during working hours, and false statements to law enforcement agencies.

(*Id.*)

Section 13-14-102, C.R.S. provides in relevant part:

> (4)(a) A temporary civil protection order may be issued if the issuing judge or magistrate finds that an imminent danger exists to the person or persons seeking protection under the civil protection order. In determining whether an imminent danger exists to the life or health of one or more persons, the court shall consider when the most recent incident of abuse or threat of harm occurred as well as all other relevant evidence concerning the safety and protection of the persons seeking the protection order. However, the court shall not deny a petitioner the relief requested solely because of a lapse of time between an act of abuse or threat of harm and filing of the petition for a protection order.
>
> (b) If the judge or magistrate finds that an imminent danger exists to the employees of a business entity, he or she may issue a civil protection order in the name of the business for the protection of the employees. An employer shall not be liable for failing to obtain a civil protection order in the name of the business for the protection of the employees and patrons.

> (5) Upon the filing of a complaint duly verified, alleging that the defendant has committed acts that would constitute grounds for a civil protection order, any judge or magistrate, after hearing the evidence and being fully satisfied therein that sufficient cause exists, may issue a temporary civil protection order to prevent the actions complained of and a citation directed to the defendant commanding the defendant to appear before the court at a specific time and date and to show cause, if any, why said temporary civil protection order should not be made permanent. In addition, the court may order any other relief that the court deems appropriate. Complaints may be filed by persons seeking protection for themselves or for others as provided in section 26-3.1-102(1)(b) and (1)(c), C.R.S.

Bishop relied on C.R.S. § 13-14-102(4)(b) when he filed the Verified Complaint on behalf of District employees.

Pizzi testified in her deposition that Bishop did not need the Board's approval to file the CPO action against the Plaintiff. (Pl.'s Ex. 26, Pizzi dep. 126:20:23). She said Bishop told her he was going to do it, and she called the Board members to let them know what was happening. (*Id*. 128:8-13; 128:25 - 129:4).

On May 8, 2009, El Paso County Magistrate William Trujillo entered 16 separate Temporary Civil Protection Orders against Pace, finding that Pace "constitutes a credible threat, that an imminent danger exists to the life and health of the Protected Persons named in this action, and sufficient cause exists for the issuance of a Civil Protection Order." (Def.'s Ex. D). The temporary Civil Protection Orders prohibited the Plaintiff from coming within 100 yards of any District facility and 16 District employees and their residences. The home addresses of the protected persons were not shown on the Temporary Civil Protection Orders.

Later that day Pace was served with the CPO Complaint and the Temporary Civil Protection Orders, and a summons showing a return date of May 19, 2009, for the hearing on whether the Temporary Civil Protection Orders should be made permanent.

C.R.S. § 13-14-102 provides in relevant part:

> (9)(a) On the return date of the citation, or on the day to which the hearing has been continued, the judge or magistrate shall examine the record and the evidence. If upon such examination the judge or magistrate is of the opinion that the defendant has committed acts constituting grounds for issuance of a civil protection order and that unless restrained will continue to commit such acts, the judge or magistrate shall order the temporary civil protection order to be made permanent or order a permanent civil protection order with different provisions from the temporary civil protection order.

Pace's attorney (Richard W. Daily) had moved for a continuance of the May 19, 2009 hearing date and did not appear in court that day, understanding that Bishop's counsel would not oppose the continuance. Bishop's attorney did appear on May 19, 2009, and on his request the court entered Permanent Civil Protection Orders. Thereafter Pace's attorney successfully moved to have those orders set aside, and the trial was set to begin on July 30, 2009.

On June 9, 2009, the Recall Committee submitted a Petition to Recall Janice L. Pizzi to the Office of the El Paso County Clerk & Recorder. On June 11, 2009, the El Paso County Clerk & Recorder verified the recall petition, determining that it contained more than the requisite number of valid signatures. (Def.'s Ex. H).

On June 12, 2009, Pace communicated by telephone with Katie Walker, an employee of Bathgate Capital. During that conversation, Pace told Walker about litigation fees which the District had incurred and told her that the District employees' salaries were higher than those being paid by other districts in the area.

Upon learning of this communication, Bishop sent an email to Janice Pizzi dated June 15, 2009, saying, "Mr. Pace has gone too far this time by interfering with a contractual relationship. I will be asking the board on Thursday to approve legal action." She responded to Bishop in an email stating, "We should have hit him with the suit last Friday when he called Bathgate the first time."

On June 17, 2009, Pace's attorney (Richard W. Daily) sent a letter to the Board, informing them that if the District were to file suit against the Plaintiff arising out of his communications with Bathgate, such a suit could be construed as an attempt to retaliate against Pace for his participation in the effort to recall District Director Jan Pizzi. (Pl.'s Ex. 5, letter dated June 17, 2009, from Richard W. Daily). The Plaintiff's attorney also reminded the District that it is "improper for a governmental body to expend any of its resources in support of or in opposition to a recall campaign." (*Id.*)

The District terminated its contract with Vladimir Jones in late June, 2009.

On June 26, 2009, District employee Daniel Everitt, a person protected under the Temporary CPOs, saw Pace near the Everitt residence and called the El Paso County Sheriff's office. An El Paso County Sheriff's deputy responded and arrested Pace for violating the terms of the Temporary CPO by being within 100 yards of Everitt's residence. Pace was jailed for one night. He defended the criminal charges, claiming that he was in the neighborhood to look for his son's stolen bicycle and was unaware of Everitt's home address.

The question of whether the Temporary Civil Protection Orders should be made permanent was tried before Magistrate Robin Chittum, beginning on July 30, 2009. Testimony was taken intermittently over 16 days, concluding in November 2009.

On August 25, 2009 – before the trial concluded – Pizzi won the recall election by a margin of 7 votes.

Forty-four witnesses testified during the CPO trial, including Bishop, Janice Pizzi and Mike Pizzi. Mike Pizzi testified about Pace's purported AK-47 threat. Janice Pizzi testified that

the Plaintiff threatened violence against the Board members and their spouses during a Board meeting in February 2009.

On November 9, 2009, Magistrate Chittum issued her ruling, finding that the preponderance of the evidence did not support the issuance of Permanent Civil Protection Orders against the Plaintiff and dismissing the Verified Complaint for Civil Protection Order with prejudice. (Pl.'s Ex. 1). Magistrate Chittum specifically found "there have been no threats of bodily harm; no imminent danger of bodily harm for the people that are part of this entity.") (*Id.* 34:5-10). She gave little weight to the evidence presented in support of the Civil Protection Orders. With respect to the Plaintiff's purported AK-47 threat, Magistrate Chittum found that Mike Pizzi was not very credible and the circumstances surrounding Pizzi's reporting of the incident indicated there was no real threat. (*Id.* 14:10 - 15:16). Magistrate Chittum found Janice Pizzi's testimony regarding Pace's purported threats to Board members and their spouses was not truthful. Magistrate Chittum surmised that Janice Pizzi was "working with political motivations" and was "happy to step back and let Mr. Bishop take any of the political fall on this." (*Id.* 23:8 – 26:7). Magistrate Chittum observed that when Bishop filed the Verified Complaint he was acting "reasonably and in good faith to try and help out his people and to try and calm things down to try and avoid conflicts." (*Id.* 32:7-10).

At the conclusion of the trial, Pace's attorney requested an award of fees and costs. Magistrate Chittum denied Pace's request for attorney's fees and granted an award of costs in the amount of $2,948.75 against Bishop. (Pl.'s Ex. 17).

Pace filed this action on May 10, 2010, seeking damages under 42 U.S.C. § 1983 for a violation of the First Amendment to the United States Constitution by retaliating against him for

his speech and political activities by pursuing the CPO action and engaging in a campaign to discredit him. He also claims a violation of the Fourth Amendment in his arrest, jailing and filing of criminal charges. The defendants, the District, Janice Pizzi and Larry Bishop, individually, have moved for summary judgment of dismissal of these claims made in the Third Amended Complaint.

The elements of a claim for retaliation in violation of the First Amendment are: (1) the plaintiff was engaged in constitutionally protected activity, (2) the governmental actions caused him such injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the governmental actions were substantially motivated as a response to his constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000). "Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Worrell*, 219 F.3d at 1212 (quoting *Lackey v. County of Bernalillo*, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan.5, 1999) (unpublished)).

Pace's political activities are at the core of the freedoms protected by the First Amendment.

The defendants argue the plaintiff cannot show that he suffered an injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity. As evidentiary support for that argument, the defendants point to the plaintiff's continued political activities after Magistrate Trujillo issued the Temporary CPOs on May 8, 2009, and after the Plaintiff's arrest on June 26, 2009, to show that he was not deterred by their conduct. Pace continued posting information on the website www.recallwoodmenhills.com.

In response, the plaintiff submitted an affidavit, stating:

>   5.      Because of Defendants' actions against me, including having me arrested and jailed, I shrank from exercising my first amendment right. For example, I posted to my blog less often; I discontinued my website with the domain name savewoodmenhills.com; I stayed at home as often as I could to avoid reprimand from Defendants; and I intermittently stopped participating in the District affairs.
>
>   6.      I stopped or limited my participation in the District's affairs because of Defendants' actions against me. I constantly feared that Defendants would take more inimical actions against me and/or my family.
>
>   7.      Additionally, because of Defendants' actions against me, I became suicidal on a number of occasions.

(Dkt. 101-1, Pl.'s Aff., filed July 5, 2012).[1]

The standard for evaluating that chilling effect on speech is objective, not subjective. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quoting *Eaton v. Meneley*, 379 F.3d 949, 954-55 (10th Cir.2004). The proper inquiry is "whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001). The application of that standard is a matter for the jury.

In this case, reasonable jurors could conclude that Pace's determination to continue his activities went beyond the ordinary.

The pivotal question in this case is the motivation of Larry Bishop in initiating the chain of events injurious to the plaintiff by filing the verified complaint for the civil protective orders issued by Magistrate Trujillo. There is sufficient evidence to support a finding that Bishop was angry about the personal attacks on him; that he wanted to protect his friend and ally, Janice

---

[1]The notary block states the affidavit was signed on July 5, 2011, but the affidavit was filed with the court on July 5, 2012, which suggests the date of signing may have been July 5, 2012.

Pizzi, from the recall and that he was concerned that the District's financial future was threatened by Pace's contact with Bathgate. That may justify a finding of a motive to cause enough trouble for Pace to silence him and for him to withdraw from the recall campaign. There is also enough evidence to support a finding that Bishop honestly perceived Pace as a threat to the safety of himself and all of the District's employees. Weighing such conflicting evidence is the function of the jury.

The liability of the individual actors exercising governmental authority is limited by the doctrine of qualified immunity. To defeat that defense the plaintiff must show that the contours of the rights claimed to be violated are sufficiently clear that a reasonable official would have understood that his conduct is in violation of that right.

Bishop was represented by an attorney in filing and prosecuting the complaint for civil protection orders. While Pace disputes the statements made in Bishop's verified complaint, there is insufficient evidence that Bishop intentionally falsified them. Magistrate Trujillo found the existence of an imminent danger and issued the orders. It is troubling that those orders did not include the addresses of the persons protected and that Colorado law does not require more of a showing of potential harm before imposing such restrictions on the liberty of a defendant, but the applicant is not responsible for what may be perceived as deficiencies in due process. He may invoke the law as it is.

Larry Bishop did not cause the plaintiff's arrest for violations of the orders or the subsequent criminal charges. There is no clearly established legal precedent warning Larry Bishop that by invoking Colorado's statute authorizing civil protection orders he was violating the First Amendment. Bishop did act through an attorney.

The only evidentiary support for the liability of Janice Pizzi for Bishop's filing of the complaint is that she was aware of and approved of what he was doing. That is not sufficient.

To the extent that the plaintiff's claims against both Pizzi and Bishop are based on their testimony at the trial before Magistrate Chittum, they are barred because witnesses have absolute immunity. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983)).

The claims against the District are premised on Bishop's authority to proceed with the filing of the CPO complaint in his capacity as manager and the Board's tacit approval by passing a resolution authorizing the payment of counsel for his services in the prosecution of it. What is missing is any evidence that suggests that the Board authorized that action for the purposes of retaliating against Pace in violation of the First Amendment. That showing would be required to make the District liable for an unconstitutional policy or practice.

The plaintiff's claim for defamation is a state law claim and this court declines to exercise supplemental jurisdiction to adjudicate it.

Based on the foregoing, it is

ORDERED that the defendants' motion for summary judgment is granted. The clerk shall enter a final judgment dismissing all of the plaintiff's claims and this civil action with an award of defendants' costs.

Date:   November 14, 2012

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge